IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-03691-RBJ-SKC

MANUEL ALEJANDRO CAMACHO,

       Plaintiff,

v.

JACOB CORDOVA, Deputy;
ANDREW BUEN, Deputy;
NICK DIBIASI, Deputy;
JEFF SMITH, Captain; and
CLEAR CREEK COUNTY SHERIFF'S OFFICE,

       Defendants.

## RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT [DKT. 50]

Plaintiff Manuel Alejandro Camacho, *a pro se* prisoner in the custody of the Weld County Jail, filed this lawsuit contending Defendant Deputies[1] violated his Eighth Amendment rights when they used excessive force and caused "unnecessary and wanton infliction of pain." [*See generally* Dkt. 8.][2] Plaintiff also contends Defendant Clear Creek County Sheriff's Office ("Sheriff's Office") failed to train the Deputies, causing the violation of his Eighth Amendment rights. [*Id.*] Defendants move to dismiss the claims arguing Plaintiff has failed to state a claim. [Dkt. 50, p.

---

[1] The deputies include Jacob Cordova, Andrew Buen, Nick Dibiasi, and Jeff Smith ("Deputies").
[2] The Court uses "[Dkt. __.]" to refer to specific docket entries in CM/ECF.

1

9.] In the alternative, they seek summary judgment arguing Plaintiff's claims are barred because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a). [*Id*. p. 6.]

Having considered the Motion, the related briefing[3], the entire case file, and applicable law, the Court makes the following recommendations. First, the Court RECOMMENDS DENYING the alternative request for summary judgment because Defendants failed to follow District Judge Jackson's Practice Standards. Those standards require that "[p]rior to submitting a motion for summary judgment, a party *must* file with the Court a letter or notice of intent to file for summary judgment." RBJ Practice Standards, p.2 (emphasis added). The undersigned's practice standards further guide that when a District Judge is the presiding judicial officer, the undersigned's practice standards "are replaced by the applicable District Judge's practice standards whenever there is a conflict between the two sets of standards." SKC Practice Standards, § A.3. Because Defendants failed to file a letter or notice of intent to file for summary judgment, the Court RECOMMENDS the Motion be DENIED concerning that relief.[4]

---

[3] Defendants did not file a reply.

[4] While passing on the merits, the Court notes there appear to be disputed issues of fact, particularly concerning whether any defects in exhaustion were excused due to prison officials' inaction or efforts to hinder Plaintiff's efforts to exhaust. *See Davis v. Corr. Corp. of Am.*, 463 F. App'x 748 (10th Cir. 2012) (reversing trial court's dismissal of inmate's civil rights complaint based on failure to exhaust where inmate submitted several informal complaints that were not responded to, and his formal grievances were then rejected based on lack of response).

Second, concerning the Motion to Dismiss, the Court recommends GRANTING it IN PART and DENYING it IN PART. The basis for this recommendation is explained below.

## BACKGROUND[5]

While he awaited a court appearance at the Clear Creek County Jail on May 15, 2019, Plaintiff alleges he was assaulted by Deputies Cordova, Buen, and Dibiasi. [Dkt. 8, p.6.] Specifically, Plaintiff explains Deputy Cordova had difficulty securing a leg shackle on Plaintiff's left ankle.[6] [*Id.*] This was due to a deformity of Plaintiff's left ankle from a motorcycle accident which left the ankle "permanently swollen and disfigured." [*Id.*] Plaintiff asked Deputy Cordova for larger shackles while explaining the condition of his ankle. [*Id.*] But Deputy Cordova continued trying to secure the too-small shackle around Plaintiff's disfigured ankle. At some point, Plaintiff "cried out in pain," complained the shackle was pinching his skin, and continued asking for larger shackles. [*Id.*]

It was then that Deputy Buen intervened and "initiated the assault" with Deputy Dibiasi against Plaintiff. Plaintiff alleges Deputy Buen took Plaintiff to the floor by "grabbing my head and chok[ing] me." [*Id.* at 6-7.] After taking him to the

---

[5] The Court accepts the following well-pleaded facts as true and views them in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). Also, Plaintiff proceeds *pro se* and the Court liberally construes his pleadings but without acting as his advocate. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[6] While Plaintiff normally was housed at the Weld County Jail, during the alleged incident he was on a writ to the Clear Creek County Jail. [Dkt. 52, p.2.]

ground, the Deputies turned Plaintiff over with his face toward the ground and kneeled on him. [*Id.* at 7.] Plaintiff claims "since both of these 230 lb. deputies were on my back I could not breath, they nearly asphyxiated me short of death. I was frightened, and when I was able to catch a breath I cried out in pain and screamed for help." [*Id.*] Deputy Dibiasi pulled on Plaintiff's arms while Plaintiff was on the ground. [*Id.* at 9.] When the Deputies tried to put Plaintiff in a security chair, they "plac[ed] a nylon strap around [his] ankles so tight that it cut off circulation to [his] feet," and they placed a helmet on his head and "choked [him] with the helmet strap . . ." [*Id.* at 10.]

Based on this incident, Plaintiff filed a grievance on May 16, 2019. [Dkt. 52, p. 3]. Having received no response from his original grievance, he made another complaint with the Clear Creek Jail in late August of 2019. [*Id.*] Still receiving no response, he eventually wrote a letter to the jail in October 2020, which Captain Smith responded to in November of 2020. [*Id.* at 4-5.]

Plaintiff commenced this action on December 17, 2020. [Dkt. 1.] He filed an amended complaint on January 28, 2021, asserting claims arising under 42 U.S.C. § 1983 alleging a violation of the Eighth Amendment against the Deputies, and a *Monell* claim against the Sheriff's Office. [Dkt. 8.]

## LEGAL PRINCIPLES

1. **Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The *Twombly-Iqbal*

4

pleading standard requires courts take a two-prong approach to evaluating the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or are mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible when the allegations, taken as true, "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard requires more than the sheer possibility a defendant has acted unlawfully. *Id.* If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242,1252 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is a

5

liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## 2.     Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"When a § 1983 defendant asserts qualified immunity, this affirmative defense creates a presumption that [the defendant is] immune from suit." *Vette v. Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted) (alteration in original) (internal quotation marks omitted). "To overcome this presumption, the plaintiff must show that (1) the officers' alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). The plaintiff bears the burden of showing facts and law to establish the inference the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the

6

defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

As to the first prong, "[i]f no constitutional right would have been violated were the allegations established," the inquiry ends. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong — whether the right was clearly established — must be considered "in light of the specific context of the case, not as a broad general proposition." *Id*. An official's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing is violating that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

## ANALYSIS

### 1. Claims against the Deputies

Plaintiff sued the Deputies in both their individual and official capacities. Defendants argue their official capacity claims should be dismissed because they are redundant given Plaintiff has also named the Sheriff's Office. The Court agrees. *See Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ("An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works.") Accordingly, the Court RECOMMENDS Defendants'

7

Motion to Dismiss be GRANTED as to the official capacity claims against the Deputies.

Concerning the claims against the Deputies in their individual capacities, Defendants argue they are entitled to qualified immunity. But the entire premise of their argument is only this: "Because Plaintiff has failed to assert an Eighth Amendment violation and does not assert any other constitutional violation as to the individual Defendants, Plaintiff has failed to allege a constitutional violation to overcome Defendants' assertion of qualified immunity." [Dkt. 50, p.9] And because the Eighth Amendment does not apply to Plaintiff as a pre-trial detainee, Defendants argue he cannot show a violation of clearly established law. [*Id*.] These arguments are unavailing.

Plaintiff is *pro se*, and therefore, the Court liberally construes his Eighth Amendment claim as one brought under the Fourteenth Amendment because he is a pretrial detainee. *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019); *Dicino v. Garcia*, No. 12-cv-01274-WYD-KLM, 2014 WL 3746961, at \*4 (D. Colo. July 30, 2014) ("The mistake made by Plaintiff of initially asserting his claim under the Eighth Amendment is a common one in similar claims brought by *pro se* litigants who were pretrial detainees when their claims arose, and the Court regularly *sua sponte* construes the claims under the Fourteenth Amendment in cases brought by state-held pretrial detainees."). Defendants acknowledge this distinction in their motion [Dkt. 50, p. 9], but nevertheless, hinge their qualified immunity argument solely on

how Plaintiff named his claim, rather than on how the Court must liberally construe his claim as a *pro se* litigant.

The standard for reviewing constitutional claims arising under the Eighth Amendment and the Fourteenth Amendment's Due Process Clause is the same. *Hill v. Truelove*, No. CIV-07-404-M, 2010 WL 56144, at *6 (W.D. Okla. Jan. 6, 2010). In this regard, Defendants qualified-immunity argument is conclusory and woefully underdeveloped because it is based solely on Plaintiff having styled his claim under the Eighth Amendment. For this reason, the Court RECOMMENDS DENYING the Motion to Dismiss to the extent it seeks qualified immunity for the Deputies. *A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) ("In addition, the qualified-immunity argument was underdeveloped. It contains mostly general legal statements and empty platitudes."); *Tillmon v. Douglas Cty.*, 817 F. App'x 586, 589-90 (10th Cir. 2020) (declining to reach qualified immunity where "defendants' analysis of qualified immunity in that motion [to dismiss] was cursory at best.").

### 2. Municipal Liability

Next, Defendants claim the Sheriff's Office is entitled to dismissal of the municipal-liability claim because of the failure to allege a constitutional violation, causation, and deliberate indifference. The Court agrees.

It is long-standing Supreme Court precedent that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)). *See also City of Canton v. Harris*, 489 U.S.

9

378, 385 (1989) (a governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.") (citing *Monell*, 436 U.S. at 694-95, 698). "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (internal quotation marks and citations omitted); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) ("[T]he Supreme Court require[s] a plaintiff to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.").

To establish municipal liability under *Monell*, a plaintiff must show (1) a municipal employee committed a constitutional violation; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). Thus, to defeat Defendants' Motion to Dismiss, Plaintiff must plausibly allege (1) an official policy or custom, (2) causation, and (3) deliberate indifference. *Schneider*, 717 F.3d at 769.

For purposes of this analysis, the Court assumes the Amended Complaint plausibly alleges the Deputies violated Plaintiff's Fourteenth Amendment rights because Defendants have not argued to the contrary. Thus, the first element is met.

Concerning the second element, a municipal policy or custom can take the form of: (1) a formal regulation or policy statement; (2) an informal custom amounting to

a widespread practice that is so permanent and settled it constitutes a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) final policymakers' ratification of the decisions (and the basis for them) of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citing *Brammer–Hoelter*, 602 F.3d at 1189–90).

The Amended Complaint attempts to allege a municipal policy or custom, but it does so only in conclusory fashion. In its entirety on the subject of a municipal policy or custom, it merely alleges "[a]s a result of this institutions (*sic*) negligence to properly train it's (*sic*) employees I have suffered long lasting injuries." [Dkt. 8, p.12.] Plaintiff does not allege any facts regarding the purported lack of proper training to plausibly allege a failure to train, let alone a failure to train resulting from deliberate indifference to the injuries he suffered. *See Bryson*, 627 F.3d at 788. He identifies no formal policy or custom, or any facts to support a policy or custom in any of its possible forms. *Id.* Conclusory allegations, such as this, which are unsupported by factual allegations are not allowed. *See Iqbal*, 556 U.S. at 678. Because Plaintiff has failed to allege sufficient facts giving rise to a policy or custom, he has failed to plausibly allege a claim for municipal liability. The Court recommends dismissal of this claim against the Clear Creek Sheriff's Office as a result.

## CONCLUSION

Based on the above, the Court Recommends the Motion for Summary Judgment be DENIED. The Court further recommends the Motion to Dismiss be GRANTED IN PART and DENIED IN PART, as follows: DENIED concerning the claims against the Deputies in their individual capacities, and GRANTED concerning the claims against the Sheriff's Office and the Deputies in their official capacities.

DATED: November 2, 2021.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, and waives appellate review of both factual and legal questions. *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985); *Makin v. Colorado Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**