**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-03691-RBJ-SKC

MANUEL ALEJANDRO CAMACHO,

    Plaintiff,

v.

CORDOVA, Deputy;
BUEN, Deputy;
DIBIASI, Deputy;
SMITH, Captain; and
CLEAR CREEK COUNTY SHERIFF'S OFFICE,

    Defendants.

## DECLARATION OF DEPUTY JACOB CORDOVA

Declarant, **DEPUTY JACOB CORDOVA**, states as follows:

1. In May 2019, I was employed at the Clear Creek County Detention Center. I have personal knowledge of the matters set forth below.

2. On May 15, 2019, I was working my assigned shift at the Clear Creek County Detention Center.

3. At approximately 9:54 AM, Manuel Camacho stepped out of Delta Pod to head to County Court.

4. When detainees are scheduled to appear in court, it is the policy of the Clear Creek Detention Center to conduct a pat down search and then place the detainee into hand and leg restraints, which consist of two sets of cuffs attached by a length of chain.

**Exhibit B**

5. I performed the pat down search of Mr. Camacho, per policy.

6. After the pat down search, I placed restraints on Mr. Camacho's hands.

7. After I placed the hand restraints on Mr. Camacho, I directed him to turn around and face the wall so I could affix the leg restraints. He complied.

8. I attached the leg restraints to Mr. Camacho's right leg. Mr. Camacho then put his right leg down and lifted his left leg.

9. Mr. Camacho indicated that the leg restraint "won't fit" on his left ankle. I felt his leg and noted that it felt enlarged. Mr. Camacho stated this was because of a previously broken ankle.

10. I told Mr. Camacho that I would go easy and only attempt to get one "click" on the restraint.

11. Mr. Camacho then said, in an aggravated tone, that "it isn't going to fucking work."

12. Deputy Andrew Buen approached from the right and asked Mr. Camacho if we were going to have a problem.

13. Mr. Camacho then took an aggressive stance toward Deputy Buen and said, "Fuck, yeah, there is."

14. Given Mr. Camacho's previous tone and his stepping away from the leg restraint, I thought that Mr. Camacho might either resist being restrained or try to engage in a fight with either Deputy Buen or myself. Out of self-protection, I glanced at Camacho's free leg in case he tried to kick at me.

15. Deputy Buen then took Mr. Camacho to the ground.

16. While he was on the ground, both Deputy Buen and I spoke to Mr. Camacho and tried to calm him down However, Mr. Camacho would not comply with orders and was combative.

17. While he was on the ground and we were trying to calm him down, Mr. Camacho attempted to roll or pull away from us on a couple of occasions. During this period, I held down Mr. Camacho's torso and his head so that he could not move into a position where he could potentially assault us.

18. Also on the ground, Mr. Camacho voluntarily hit his head on the ground twice. He attempted to hit his head a third time, but I stopped him from doing so with my hands. A helmet was eventually placed on Mr. Camacho because he was hitting his head on the ground.

19. At no time did I see Deputy Dibiase choking Mr. Camacho with the strap from the helmet.

20. To ensure Mr. Camacho's safety, Deputies Nick Dibiase, Andrew Buen, and myself, placed Mr. Camacho into a WRAP restraint system. Other personnel assisted in placing Mr. Camacho into the WRAP restraint system. Mr. Camacho was placed in the WRAP system and chair for approximately 35 minutes.

## **VERIFICATION**

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Executed on the ____4____ day of _____November_____, 20_22___.

At 1430 hours_____ Georgetown___ (city), Colorado.

SIGNED:

_____/S/ Jacob Cordova_____
Name: JACOB CORDOVA